UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEAUNNTA MALLOY,

                                        Plaintiff,                    9:23-CV-1186
                                                                      (MAD/DJS)

              v.

SHANELY, et al.,

                                        Defendants.

_____

APPEARANCES:

DEAUNNTA MALLOY
Plaintiff, pro se
21-A-1621
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

### I.      INTRODUCTION AND PROCEDURAL HISTORY

         In September 2023, pro se plaintiff Deaunnta Malloy ("plaintiff") commenced this action

pursuant to 42 U.S.C. § 1983 ("Section 1983") and sought leave to proceed in forma pauperis

("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 5 ("IFP Application").  By Decision and Order filed on

October 19, 2023 (the "October Order"), the Court granted plaintiff's IFP Application and

reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and

28 U.S.C. § 1915A(b)(1).  Dkt. No. 8.  The Court dismissed all claims, without prejudice, for

failure to state a cause of action.  *Id*.  In light of his pro se status, plaintiff was afforded an

opportunity to submit an amended complaint.  *Id*.  Plaintiff was advised that, if he failed to

submit an amended complaint within thirty (30) days of the filing date of the October Order, the Court would, without further order, enter judgment dismissing this action without prejudice for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B) and 1915A(b)(1).  *Id*. at 10.

On November 8, 2023, plaintiff filed a letter request seeking an extension of time to submit an amended complaint.  Dkt. No. 10.  The Court granted the request and directed plaintiff to file an amended pleading on or before December 15, 2023.  Dkt. No. 11.

On December 18, 2023, plaintiff filed another letter request seeking an extension of time to submit an amended complaint.  Dkt. No. 12.  The Court granted the request and directed plaintiff to file an amended complaint on or before January 18, 2024.  Dkt. No. 13.

On January 26, 2024, after plaintiff failed to comply with the October Order, judgment was issued.  Dkt. No. 14.

On February 16, 2024, plaintiff filed a motion, which the Court liberally construes as a motion to vacate the judgment, with an amended complaint.[1]  Dkt. No. 15; Dkt. No. 15-1 ("Am. Compl."); *see Cato v. Reardon, et al.*, No. 23-471, Dkt. No. 29 (2d Cir. Sept. 2023) (directing district court to construe amended complaint as a timely motion to alter or amend judgment).

## II.    MOTION TO VACATE JUDGMENT

Rule 60(b) provides:

> **Grounds for Relief from a Final Judgment, Order or Proceeding.**  On a motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the

---

[1]  On March 6, 2024, plaintiff filed a duplicate of the first motion to vacate the judgment with the same amended complaint.  Dkt. No. 19.

following reasons:

(1)   mistake, inadvertence, surprise, or excusable neglect;
(2)   newly discovered evidence, that with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3)   fraud, misrepresentation, or misconduct;
(4)   the judgment is void;
(5)   the judgment has been satisfied, released, or discharged; or
(6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Construing his submission liberally, plaintiff requests relief under rule 60(b)(6) arguing "extraordinary circumstances."  Rule 60(b)(6) is a "catch-all" provision that applies to "extraordinary circumstances" or "extreme hardship."  *U.S. v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977).  The decision whether to afford relief rests with the "sound discretion of the district court."  *Garcia v. Myears*, No. 13-CV-0965, 2015 WL 1015425, at *2 (W.D.N.Y. March 9, 2015).  "Generally, courts require that the evidence in support of the motion to vacate a final judgment be 'highly convincing,' that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties."  *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citation and internal citations omitted).

Here, plaintiff filed the within motion on February 16, 2024, less than a month after judgment was issued.  Given the fact that plaintiff is pro se, the Court does not find the delay to be unreasonable.  In support of his claim of "extraordinary circumstances," plaintiff alleges that Clinton Correctional Facility, his present place of confinement, is "on edge" due to recent litigation.  Dkt. No. 15.  Plaintiff claims he attempted to mail his amended complaint on two occasions, but it was returned.  Dkt. No. 15.

Based upon a review of the motion and procedural history, to prevent manifest

3

injustice, the Court grants plaintiff's motion to vacate the judgment.  *See Braithwaite v. Gaitman*, No. 22-CV-0974, 2022 WL 14059127, at *5 (E.D.N.Y. Oct. 24, 2022) (noting that the special solicitude towards pro se litigants "takes a variety of forms, including liberal construction of papers, relaxation of the limitations on the amendment of pleadings, leniency in the enforcement of other procedural rules").  Thus, plaintiff's motion to vacate the judgment is granted and the judgment entered January 26, 2024 is vacated.  The Clerk is directed to restore this case to the active docket.

## III.  SUFFICIENCY OF AMENDED COMPLAINT

Because this action has been reopened, the Court deems the amended complaint (Dkt.  No. 15-1) as the operative pleading and will review plaintiff's amended complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A.

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A)(b) was discussed at length in the October Order and will not be restated in this Decision and Order.  *See* Dkt. No. 8 at 2-4.

### B.  Summary of Factual Allegations and Claims

In the amended complaint, plaintiff identified the following new defendants: Commissioner Hearing Officer Eric Gutwein ("Gutwein")[2]; Lieutenant A. Covert ("Covert"); Sergeant Extrand ("Extrand"); Corrections Officer Alexzonia ("Alexzonia"); and Corrections

---

[2]  Plaintiff refers to this defendant as "Eric Gutwien" in the caption however, in the list of parties and body of the amended complaint, plaintiff refers to defendant as "Eric Gutwein."  Accordingly, the Court will refer to the defendant as "Gutwein."

Officer A. Hussain ("Hussain").[3]  Am. Compl. at 1, 3-10.

The incidents that form the basis for the amended complaint allegedly occurred while plaintiff was confined at Coxsackie Correctional Facility ("Coxsackie C.F."). *See generally* Am. Compl.  The following facts are set forth as alleged by plaintiff in his amended complaint.

On August 3, 2022, defendants Corrections Officers Montgomery, Nin, Ramirez, Redner, and Gonzalez-Santos appeared at plaintiff's cell for a cell search.  Am. Compl. at 15. At the time, plaintiff was using the lavatory and had placed a towel "covering the window view to his housing cell."  *Id*. at 16.  Montgomery directed plaintiff to remove the towel and plaintiff asked for "one minute" but, after hearing a "commotion outside," he immediately removed the towel.  *Id.*

Plaintiff was ordered to "cuff up" and directed to face the back window with his hands "high and flat on the wall."  Am. Compl. at 17.  Plaintiff complied and was "rushed" by Montgomery, Nin, Ramirez, Redner, and Gonzalez-Santos.  *Id*.  Defendants yelled "stop resisting" however, plaintiff was not resisting.  *Id*.  Plaintiff was "wrestled down, choked, punched, and kicked."  *Id.* at 17.  Plaintiff's fingers were "twisted" and defendants uttered racial slurs.  Am. Compl. at 18.  Plaintiff fell on the floor and was escorted to the facility hospital.  *Id*.  While he was being escorted, plaintiff saw defendant Superintendent Raymond J. Shanley ("Shanley") and pleaded with him to intervene.  *Id*. at 6.  Shanley "smirk[ed]" and did not respond.  *Id*.

When plaintiff arrived at the hospital, Nin "karate kicked him in the face" and "all

---

[3]  The Clerk of the Court is directed to add these individuals as defendants to the Docket Report.  With the amended complaint, plaintiff also changed the name of defendant "Shanely" to "Shanley."  The Clerk shall amend the Docket Report accordingly.

defendants" started kicking and punching his head, face, torso, back, and buttocks.  Am.

Compl. at 18.  Plaintiff briefly lost consciousness and, when he awoke, Hussain appeared at

the door and asked "is everything all right?"  *Id*.  Defendants responded "you know that," and

Hussain closed the door.  *Id.*  Defendants then continued to assault plaintiff until he lost

consciousness again.  *Id*. at 18-19.

Plaintiff suffered injuries and experienced pain in his lower back, buttock, and rectal

area.  Am. Compl. at 19.  Once again, Hussain appeared at the door and asked "is everything

all right?"  *Id*.  Defendants told him "couldn't be better" and Hussain closed the door.  *Id*.

Plaintiff was punched in the stomach and experienced dizziness when he attempted to stand.

*Id.*

Plaintiff alleges that "an object (purporting to be a weapon) was inserted into his

rectum" by Nin, Redner, and Gonzalez-Santos in a "vacant exam room" while Hussain was

"stationed" as the "watchout."  Am. Compl. at 6.

The medical staff at Clinton C.F. directed officers to take plaintiff to "Albany Med."  Am.

Compl. at 19.  Plaintiff suffered injuries to his head, face, back, torso, internal injuries to his

anal, kidney, and other injuries as a result of the "beating and sexual assault."  *Id.* at 20.

While at Albany Medical Center, an "item [was] extracted from his rectum."  *Id*. at 4.

Plaintiff received a misbehavior report as a result of the incidents.  Am. Compl. at 12.

While he was confined in the Special Housing Unit ("SHU") pending disciplinary proceedings,

Extrand and Alexzonia withheld food from plaintiff or served contaminated meals for "three

days."  *Id*. at 5, 10, 13.  When plaintiff complained, Extrand and Alexzonia responded with

racial slurs.  *Id*. at 10, 13.

Gutwein presided over a hearing and denied plaintiff the right to an employee

6

assistant, the right to call witnesses and to present evidence.  *Am. Compl.* at 13*.*  In total, plaintiff served 290 days in the Special Housing Unit ("SHU").  *Id.*

Construing the amended complaint liberally, plaintiff asserts the following: (1) Eighth Amendment excessive force and failure-to-intervene claims against Nin, Redner, Gonzalez-Santos, Montgomery, Ramirez, Hussain, Covert, and Shanley; (2) Eighth Amendment claims related to plaintiff's conditions of confinement against Extrand and Alexzonia; (3) Fourteenth Amendment due process claim against Gutwein; (4) constitutional claims related to violations of DOCCS' Directives; and (5) First Amendment retaliation claims against Gutwein, Covert, Extrand, Alexzonia, and Hussain.  *See generally* Am. Compl. Plaintiff seeks monetary damages and declaratory relief.  *See id.* at 22.

**C. Discussion**

**1. Eighth Amendment Excessive Force and Failure-to-Intervene Claims**

The law related to Eighth Amendment excessive force and failure-to-intervene claims was discussed in the October Order and will not be restated herein.  *See* Dkt. No. 8 at 7-9.  In the October Order, the Court dismissed plaintiff's claims for failure to allege personal involvement.  *Id*. at 9. The Court reasoned, "[p]laintiff alleges that 'defendants' assaulted him and failed to protect him.  However, the complaint does not describe the specific conduct of each of the defendants.  It is not clear which of the individual defendants actually assaulted plaintiff and which defendants were present and failed to act."  *Id.* at 7-8.

With the amended complaint, plaintiff has partially addressed the deficiencies discussed in the October Order.  At this juncture, plaintiff has sufficiently plead excessive force and failure-to-intervene claims against Montgomery, Nin, Ramirez, Redner, Gonzalez-Santos, Hussain, and Shanley to require a response.  In so ruling, the Court expresses no

7

opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

A different conclusion is reached however, with respect to Covert.  As discussed in the October Order:

> It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). In a recent decision, the Second Circuit held that "there is no special rule for supervisory liability" and, that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d. 609 (2d Cir. 2020).

Dkt. No. 8 at 6.

Here, plaintiff alleges that Covert was the "watch commander" on "the day in question." Am. Compl. at 4.  The amended complaint however, lacks facts suggesting that Covert personally participated in the alleged excessive force, that he was present during the incidents, or that he witnessed the alleged assaults.  Accordingly, plaintiff has failed to plead a viable Eighth Amendment claim against Covert.  *See Flores v. Giuliano*, No. 12 C 162, 2014 WL 3360504, at *9 (N.D. Ill. July 9, 2014) (awarding summary judgment to watch commander who was not on the scene at the time).

## 2.  Eighth Amendment - Conditions of Confinement

"The Second Circuit has held that the Constitution requires that prisoners be fed nutritionally adequate food and 'under certain circumstances a substantial deprivation of food

may well be recognized as being of constitutional dimension.' " *Sankara v. Montgomery*, No. 9:16-CV-0885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)), *adopted by* 2018 WL 3408135 (N.D.N.Y. July 13, 2018); *see also Jackson v. Marks*, 722 Fed. App'x 106, 107 (2d Cir. 2018) (summary order) ("[A] substantial deprivation of food can cause serious physical harm sufficient to find cruel and unusual punishment in violation of the Eighth Amendment.").

  "To establish a valid claim that the denial of food . . . constitutes an Eighth Amendment violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received." *Lewis v. Zon*, 920 F.Supp.2d 379, 387 (W.D.N.Y. 2013) (citation omitted). 'A condition is serious for constitutional purposes if it presents 'a condition of urgency that may result in degeneration or extreme pain.' " *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1988)).

  Plaintiff's claims against Extrand and Alexzonia arising from the allegation that they refused to provide plaintiff with meals or provided contaminated meals for three days do not sufficiently allege that plaintiff was denied life's necessities under the Eighth Amendment. Plaintiff has failed to identify the date(s) and number of times when defendants denied him meals or served him contaminated food. Moreover, plaintiff has not alleged that he suffered any injury as a result of the alleged deprivation or contamination. The Court is therefore unable to evaluate whether defendants' actions give rise to a constitutional claim. *See Reeder v. Artus*, No. 9:09-CV-575 (DNH/DRH), 2010 WL 3636138, at *11 (N.D.N.Y. July 27, 2010) (recommending dismissal of Eighth Amendment claim against two corrections officers based on an allegation that they "denied him food meals" because the complaint "fail[ed] to allege with specificity any dates or times of such meal denials"), *report and recommendation adopted*

9

*by* 2010 WL 3636132 (N.D.N.Y. Sept. 9, 2010); *Konovalchuk v. Cerminaro*, No.

9:11-CV-01344 (MAD/CFH), 2014 WL 272428, at *1-*3, *21 (N.D.N.Y. Jan. 24, 2014)

(adopting recommendation dismissing Eighth Amendment claim based on denial of two

consecutive meals); *Gill v. Hoadley*, 261 F.Supp.2d 113, 129 (N.D.N.Y. 2003) (finding that

complaint failed to state Eighth Amendment claim where prisoner alleged he was denied one

meal).

Accordingly, the Eighth Amendment claims against Extrand and Alexzonia are

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state

a claim upon which relief may be granted pursuant to Section 1983.

### 3. Fourteenth Amendment Due Process Claims

Plaintiff claims that Gutwein presided over a Superintendent's Hearing related to a

misbehavior report issued by Hussain, who charged plaintiff with possessing a weapon.  Am.

Compl. at 3.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall .

. . deprive any person of life, liberty, or property without due process of law."  U.S. Const.,

amend. XIV.  To show a procedural due process violation in a Section 1983 action, a plaintiff

must demonstrate that he had a protected liberty interest and that he was deprived of that

liberty interest without due process of law.  *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir.

2001); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000).  A prisoner's protected liberty

interest is implicated where the punishment at issue imposes an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*,

515 U.S. 472, 484 (1995).  The prevailing view in this Circuit is that, by its regulatory scheme,

the State of New York has created a liberty interest in remaining free from disciplinary

10

confinement.  *See, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001).  Accordingly, to find that plaintiff's complaint states a cognizable procedural due process claim, the Court must inquire whether the allegations related to the conditions of plaintiff's disciplinary confinement rise to the level of an atypical and significant hardship under *Sandin*.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility, as well as those in administrative and protective confinement.  *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting Sandin, 515 U.S. at 484)).  When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate.  *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).  Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, *see Colon*, 215 F.3d at 232 n.5, the Second Circuit generally takes the position that restrictive confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions."  *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citing *Colon*, 215 F.3d at 231).

"When a prison disciplinary hearing may impose a punishment sufficient to trigger due process protections, 'the inmate must receive: (1) advance written notice of the disciplinary

11

charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.' " *Washington v. Gonyea*, 538 Fed. App'x 23, 25 (2d Cir. 2013) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).  In addition, "due process requires 'that there be some evidence to support the findings made in the disciplinary hearing.' "  *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992).  "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 447 (1985) (emphasis added).

Here, even assuming plaintiff suffered a deprivation of a liberty interest, plaintiff's due process claims are too vague to warrant a response.  First, the amended complaint lacks any facts related to when the hearing was held, what type of hearing was held, the reason for the hearing, the charges, or the sentence, if any, imposed by Gutwein.  Plaintiff has not specified what witnesses or documents he requested during his hearing, why the testimony or evidence was necessary, and Gutwein's response to those requests.

Accordingly, the Court dismisses plaintiff's due process claims against Gutwein pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

Construing the amended complaint liberally, plaintiff also claims that Hussain violated his due process rights when he issued a false misbehavior report.  Even if this assertion is true, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).  Rather, "[t]he issuance of false misbehavior reports and

provision of false testimony against an inmate . . . violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, . . . or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights[.]" *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) (internal citations omitted).

As noted *supra*, the due process claim related to procedural protections at the heraing is dismissed.  Moreover, plaintiff does not allege that the misbehavior report was issued in retaliation for his exercise of a constitutionally protected right.  Accordingly, the Court finds that plaintiff has failed to state a claim for violation of his due process rights against Hussain.

### 4. Violations of DOCCS' Directives

Plaintiff claims that defendants violated DOCCS Directives.  *See* Am. Compl. at 13.  A Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); *see also Sanders v. Gifford*, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to follow a DOCCS directive does not give rise to a § 1983 claim).

Accordingly, the Court dismisses these claims.

### 5. First Amendment Retaliation Claims

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected"; (2) the

defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

Plaintiff's retaliation claims against Gutwein, Covert, Montgomery, Extrand, and Alexzonia, *see* Am. Compl. at 4, 5, 9, 10, are subject to dismissal. First, the amended complaint lacks facts suggesting that plaintiff engaged in constitutionally protected conduct. Plaintiff vaguely alleges that he filed "internal complaints" and "allegations," *see id.* at 4, 5, 10, but fails to allege facts related to when he filed complaints, whether the complaints were written or verbal, who was aware of the complaints, and the sum and substance of the complaints. Moreover, even assuming plaintiff suffered adverse actions, the pleading lacks facts connecting the defendants to any of the complaints or protected activity. Even construing the amended complaint liberally, plaintiff has failed to allege any facts to plausibly suggest that defendants were motivated to retaliate against plaintiff. *See Hare v. Hayden*, No.

14

09 Civ. 3135, 2011 WL 1453789, at *4-5 (S.D.N.Y. Apr. 14, 2011) (holding that the plaintiff

"fail[ed] to establish that [the defendant] had a motive to retaliate" against him for complaints

filed against another corrections officer).

Accordingly, plaintiff's retaliation claims are dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to vacate (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that the judgment entered January 26, 2024 (Dkt. No. 14) is vacated, and

is further it

**ORDERED** that the amended complaint (Dkt. No. 15-1) is accepted for filing and is

deemed the operative pleading; and it is further

**ORDERED** that the pleading at Dkt. No. 15-1 shall be filed by the Clerk as the

amended complaint; and it is further

**ORDERED** that the Clerk of the Court shall amend the Docket Report in the following

respect: (1) add defendants Gutwein, Covert, Extrand, Alexzonia, and Hussain; and (2)

substitute "Shanley" for "Shanely"; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

granted: (1) Eighth Amendment claims against Covert, Extrand, and Alexzonia; (2) Fourteenth

Amendment claims; (3) claims related to violations of DOCCS' directives; and (4) First

Amendment retaliation claims; and it is further

**ORDERED** that the excessive force and failure-to-intervene claims against Montgomery, Nin, Ramirez, Redner, Gonzalez-Santos, Hussain, and Shanley  survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants.  The Clerk shall forward a copy of the summonses and amended complaint to the Office of the Attorney General, together with a copy of this Decision and Order, by electronic mail only; and it is further

**ORDERED** that a response to the amended complaint be filed by defendants, or counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

**change in his address; their failure to do so will result in the dismissal of his action**;

and it is further

  **ORDERED** that the Clerk of the Court shall terminate Gutwein, Covert, Extrand, and

Alexzonia as defendants herein; and it is further

  **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on

plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

Dated: March 26, 2024
   Albany, New York

Mae A. D'Agostino
U.S. District Judge